# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| L.C. 1 et al., | : | |
| | : | |
| Plaintiffs, | : | Case No.: 07-675 GMS |
| | : | |
| VS. | : | **JURY TRIAL DEMANDED** |
| | : | |
| STATE OF DELAWARE, et al., | : | |
| | : | |
| Defendants | : | |

## ANSWER OF THE PLAINTIFFS TO DEFENDANT, ANDREW LIPSTONE'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

AND NOW, come the Plaintiffs herein, L.C.1. (f.k.a. S.W.), a Minor, by and through her legal guardians, Sherman Catchings and Gladys Cathings; and L.C.2 (f.k.a. L.W.), a Minor by and through his legal guardians, Sherman Catchings and Gladys Catchings, by and through their undersigned counsel, and hereby respond to the Motion of Defendant Andrew Lipstone, Esquire for dismissal of the Plaintiffs' Complaint and request that this Honorable Court deny this Motion for the reasons set forth in the accompanying answering Brief in Opposition to Defendant Lipstone's Motion to Dismiss.

SCHMIDT, KIRIFIDES, PEARSON,
KOUTCHER & FRIDKIN

/s/ _____
Matthew H. Osborne, Esq. Bar #4630
1301 N. Harrison Street, Unit 105
Wilmington, DE 198806
(302) 836-3900
Attorneys for Plaintiffs

Dated: June 16, 2008

## CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on the 16th day of June, 2008, he caused the attached Answer of the Plaintiffs to Defendant, Andrew Lipstone's Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) to be filed with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

**Name and Address of Recipient(s):**

Stephani J. Ballard, Esquire
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801

Collins J. Seitz, Jr., Esquire
Connolly, Bove, Lodge & Hutz, LLP
1007 North Orange Street
PO Box 2207
Wilmington, DE 19899

William J. Cattie, III, Esquire
Rawle & Henderson, LLP
300 Delaware Avenue, Suit 1015
P.O. Box 588
Wilmington, DE 19899-0588

Ralph Durstein, Esquire
Deputy Attorney General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801

Kevin J. Connors, Esquire
Marshall, Dennehey, Warner, Coleman &
Goggin
P.O. Box 8888
Wilmington, DE 19801

SCHMIDT, KIRIFIDES, PEARSON,
KOUTCHER & FRIDKIN

Date: June 16, 2008   By      /s/_____

Matthew H. Osborne, Esquire
1301 N. Harrison Street, Unit #105
Wilmington, DE 19806
(302) 836-3900
I.D. No.: 4630
osbornelaw@verizon.net

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

L.C. 1 et al.,                                    :
                                                  :
                    Plaintiffs,                   :     Case No.: 07-675 GMS
                                                  :
        VS.                                       :     **JURY TRIAL DEMANDED**
                                                  :
STATE OF DELAWARE, et al.,                        :
                                                  :
                    Defendants                    :

## ANSWERING BRIEF OF THE PLAINTIFFS
## IN OPPOSITION TO THE MOTION TO DISMISS
## OF DEFENDANT, ANDREW LIPPSTONE

SCHMIDT, KIRIFIDES, PEARSON,
KOUTCHER & FRIDKIN

/s/_____
Matthew H. Osborne, Esq. Bar #4630
1301 N. Harrison Street, Unit 105
Wilmington, DE 198806
(302) 836-3900
Attorneys for Plaintiffs

Dated: June 16, 2008

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES............................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS....................................... 1

SUMMARY OF ARGUMENT...................................................................... 2

CONCISE COUNTER STATEMENT OF FACTS........................................ 3

ARGUMENT:

    The claim of Defendant Lippstone, that he has both Federal and State
    immunity from suit and that his defense of immunity is so abundantly
    clear that it should be properly determined on a Motion to Dismiss, is
    simply erroneous..................................................................................... 6

    A.    Not all of Lippstone's actions were an integral part of the judicial
        process for which absolute immunity from federal claims may be
        sustained........................................................................................ 9

    B.    Defendant Lippstone is not immune from suit under the Eleventh
        Amendment of the United States Constitution....................................... 12

    C.    The question of whether Lippstone is entitled to immunity under
        Delaware State law pursuant to Delaware Code §29 Del. C.
        §9008A is a question of law which cannot be resolved within
        the present Motion........................................................................... 13

    D.    Defendant Lippstone's claims for the dismissal of state law claims
        based on 31 Del. C. §304 and 29 Del. C. §9007A are premature............. 14

CONCLUSION........................................................................................... 14

i

## **TABLE OF AUTHORITIES**

### **CASES**

PAGE

Forrester v. White, 484 U.S. 219, 224 (1988)                        11

Gardner v. Parson, 874 F. 2d 131, 144 (3d Cir. 1989)          10,11

Hughes v. Long, 242 F. 3d 121, 125 (3d Cir. 2001)            11

Imbler v. Pachtman, 424 U.S. 409, 430 (1976)               11

Witham v. Bowersock, 1991 WL 89825 (Del. Super.1991)       4

### **STATUTES**

10 Del. C. §8119                          4

29 Del. C. §9007A                       1,2,3,6
                                             7,8,9,10,14

29 Del. C. §9007A(a)                    12

29 Del. C. §9007A(b)(2)               4, 12

29 Del. C. §9007A(c)                    9, 10

29 Del. C. §9007A(c)(2)               10

29 Del. C. §9008A                      13

31 Del. C. §304                           14

42 U.S.C. §1983                          9, 13

### **RULES**

F.R.C.P. 12(b)(6)                       1

F.R.C.P. 26(d)                          4

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

This case arises out of the alleged intentional and severe scalding of the hand of a three year old female foster child (L.C.1) on October 28, 2005 by one or both of the foster parent Defendants (Dequan and Kimberly Haynes), witnessed by her 4 year old brother (LC2).  By Order dated May 28, 2003, a Delaware State Court removed both children from the custody of their biological parents and placed them within the care, custody, and control of the State and non-state Defendants who ultimately placed them in the hands of the Defendant Haynes as foster parents.  During this process the moving Defendant, Andrew Lippstone, Esquire, was serving as the children's guardian pursuant to 29 Del. C.§9007A.

The Plaintiffs' Complaint alleges violations of the minor Plaintiffs' rights under the United States and Delaware State Constitutions and laws and requests relief pursuant to, *inter alia*, 42 U.S.C. §1983.  This is the minor Plaintiffs' Answering Brief to Defendant Andrew Lippstone's Motion to Dismiss their claims against him pursuant to F.R.C.P. Rule 12(b)(6).

## SUMMARY OF ARGUMENT

It is entirely premature to consider the Motion to Dismiss the Plaintiffs' Complaint filed by Defendant, Andrew Lippstone based upon the fact that he has failed and refused to provide the Plaintiffs' current adoptive parents with the investigation and documentation that he was charged by law to obtain on behalf of the minor children as part of his role as their guardian ad litem pursuant to 29 Del. C. §9007A, and because any finding of immunity based upon the "judicial" nature of the functions that Defendant, Lippstone performed cannot be fully ascertained without a full examination of his records and explanation of his activities on behalf of these children.

Based upon the express terms of 29 Del. C. §9007A it would appear clear that the role and conduct of Defendant, Lippstone do not afford him judicial immunity under the circumstances of this case.

## CONCISE COUNTER STATEMENT OF FACTS

The minor Plaintiffs were removed from the care of their biological parents by Order of the Delaware State Court on or about May 28, 2003. (Complaint at ¶22). At some time prior thereto and at all times subsequent to the initial removal of the minor Plaintiffs from the custody of their biological parents, the Delaware State foster care agencies were tasked with the obligation to protect the minor Plaintiffs from physical and emotional harm and to secure for them all of their rights under the laws and Constitution of the State of Delaware as well as the laws and Constitution of the United States of America. (See Complaint generally). Subsequent to the removal of the minor children from the custody of their biological parents, the Delaware Family Court, in conjunction with the Office of the Child Advocate, ordered the appointment of Defendant Lippstone to fulfill the duties and responsibilities provided for pursuant to 29 Del. C. §9007A under the designation *guardian ad litem*. (See Complaint at ¶24).

The minor Plaintiffs' Complaint was filed on their behalf by their current legal guardians, Sherman and Gladys Catchings, a couple who subsequently adopted the minor Plaintiffs after the events alleged in their Complaint. (See Complaint at ¶¶3-4). In spite of the fact that the Plaintiffs are minors and spent substantially all of their lives in the care, custody, control and "protection" of a multitude of agencies and appointed "guardians," the State of Delaware affords no statutory protection and preservation of their rights, requiring that any lawful claims be brought on their behalf within two (2) years of the date of the occurrence of any wrongful event without the benefit of a

minority tolling provision 10 Del. C. §8119; <u>Witham v. Bowersock</u>, 1991 WL 89825 (Del. Super.).[1]

The minor Plaintiffs' adoptive parents now bring this action without any of the knowledge of the facts and circumstances of the minor Plaintiffs' previous lives, during the time that they were in the care, custody, control, and under the protection of the Defendants.  These adoptive parents cobble together the allegations of the Complaint without the benefit of some or all of the state mandated reports of investigations, evaluations, medical care, education, and other events in these children's lives, including the names and positions of the persons who are charged and/or tasked with protecting the interests of these children while they were in the care, custody, control, and protection of the State, including while they were being allegedly severely injured at the hands of the Haynes Defendants.  Further, as will be discussed infra, the one person charged with collecting and maintaining all of the information necessary to protect these children's rights, Defendant Lippstone, conditioned his cooperation and the fulfillment of his duties to the Plaintiffs on their execution of a General Release of any claims against him.  (A true and correct copy of the letter from Matthew Osborne, Esquire dated February 8, 2007, requesting Lippstone's cooperation and files together with Lippstone's responsive letter of February 29, 2007, with enclosed General Release are attached hereto and made a part hereof as Exhibit "A"-"C" respectively.

Against this background, the Plaintiffs have filed Plaintiffs' Motion for Rule 16 Conference and Discovery in Aid of Filing Amended Complaint Pursuant to F.R.C.P. 26(d) requesting that this Honorable Court set dates for the Defendants to meet their disclosure obligations under Fed. R. Civ.

---

[1]

In the instant case it is not of record, nor do the Plaintiff adoptive parents even know, whether the guardian ad litem responsibilities of Defendant, Lippstone have ended by the required Court Order.  See: e.g.: 29 Del. C. §9007A(b)(2).

4

P. Rule 26 and to permit a certain amount of discovery so that the Plaintiffs may file an Amended Complaint wherein the individuals and/or entities acting under color of law responsible for the injuries caused to the minor Plaintiffs may be properly named and/or joined to this action and the legal theories associated therewith be fully pled.  It is also against this backdrop that the Defendant, Andrew Lippstone, Esquire, refusing to provide even the documents that he had been charged with obtaining on the minor Plaintiffs' behalf, moves this Court to dismiss the claims against him based upon immunity from suit and deficiencies in the allegations of the Plaintiffs' current Complaint.

## ARGUMENT

**The claim of Defendant Lippstone, that he has both Federal and State immunity from suit and that his defense of immunity is so abundantly clear that it should be properly determined on a Motion to Dismiss, is simply erroneous.**

## I.    INTRODUCTION:

The facts surrounding Defendant Lippstone's "representation" of the minor Plaintiffs following their removal from the custody of their biological parents is far from clear. Lippstone himself has concealed from the Plaintiffs what duties or tasks he performed, and he has refused to turn over or disclose any of his records (the records of the Plaintiffs' lives under his watch) to representatives who now seek to protect the rights of these children. It is difficult to imagine what standard should be applied to the performance of his "guardian ad litem" duties or the legal role he served for these children. It is simply not clearly established whether Lippstone's representation in these circumstances merits immunity.

Lippstone's role in the lives of these children in part derives from Delaware State law which provides as follows:

(a) Purpose.--(1) The General Assembly has recognized the need to safeguard the welfare of abused, neglected and dependent children in this State. As such, it has charged the Office of the Child Advocate and the Court-Appointed Special Advocate Program with ensuring representation of children's best interests in child welfare proceedings through appointment of guardians ad litem. To this end, the Office shall coordinate with the Family Court and the Court-Appointed Special Advocate program to implement and administer a program for guardian ad litem representation of children.

(2) In determining whether to represent an abused, neglected or dependent child, the Office may communicate with any child at issue and may have access to all information relating to that child held or maintained by the Department and/or the Family Court. If the Office determines that a child needs guardian ad litem representation, the Court shall sign an order appointing the designated attorney as

6

attorney guardian ad litem.

(3) This section shall be liberally construed so that these purposes may be realized.

(b) Appointment of attorney guardian ad litem.--(1) In the event that the Family Court Judge determines, pursuant to the conditions set forth in § 701© of Title 13 that an attorney guardian ad litem should be appointed, the Family Court Judge shall sign an order appointing the attorney guardian ad litem. That order shall impose on the attorney guardian ad litem all the duties, rights and responsibilities set forth in this section. Upon entry of the order, the attorney guardian ad litem shall have the authority to review all documents and interview all pertinent persons having significant information relating to the child and the child's life circumstances.

(2) The appointment shall last until the attorney guardian ad litem is released from responsibility by order of the Court, or until the attorney guardian ad litem's commitment to the Court ends.

(3) The attorney guardian ad litem shall be a party to any child welfare proceeding in which the child is the subject, and shall possess all the procedural and substantive rights of a party including those set forth in § 732 of Title 13.

(4) Upon presentation of the order of appointment by the attorney guardian ad litem, any agency, hospital, school, organization, division or department of the State, doctor, nurse or other health care provider, treatment facility, psychologist, psychiatrist, police department or mental health clinic shall permit the attorney guardian ad litem to inspect and copy any records relating to the child and parents involved in the case of appointment without consent of the child or parents.

(c) Duties and rights.--The attorney guardian ad litem's duty is to the child. The scope of the representation of the child is the child's best interests. The attorney guardian ad litem shall have the duty of confidentiality to the child unless disclosure is necessary to protect the child's best interests. As such, the attorney guardian ad litem shall:

(1) Represent the best interests of the child in all child welfare proceedings, and explain to the child, taking into account the child's ability to understand the proceedings, the duties of the guardian ad litem;

(2) Be trained by the Office of the Child Advocate or a course approved by the Office prior to representing any child before the Court. The attorney guardian ad litem shall be required to participate in ongoing training regarding child welfare. The attorney shall be employed, contracted and/or appointed by the Office;

7

(3) Conduct an independent investigation of the circumstances of a case of appointment, which shall include but not be limited to interviews and/or observations of the child and relevant individuals, as well as a review of all relevant records and reports;

(4) Present evidence to the Court in support of his or her position;

(5) Be provided with notice of every Court proceeding and receive copies of every pleading;

(6) Participate in all depositions, negotiations, discovery, pretrial conferences, hearings and appeals;

(7) Have access to all records regarding the child and his or her family maintained by the Division;

(8) Monitor cases to which they are appointed to assure that the terms of the Court's orders are fulfilled and permanency for the child is achieved;

(9) Receive reasonable notice from the Division of changes in placement, school or any other change of circumstances affecting the child;

(10) Receive reasonable notice from the Division of any founded complaint involving: (1) the child, where the child is the alleged victim; (2) the residence in which the child lives; and/or (3) the home-based daycare which the child attends;

(11) Request a hearing before the Court when the plan on behalf of the child is not implemented, is not meeting the child's needs, or upon completion of a Division investigation;

(12) Request any appropriate relief from the Court on behalf of the child;

(13) Appear, when appropriate, on behalf of a child before the Violent Crimes Compensation Board, to pursue a claim on behalf of the child, as set forth in Chapter 90 of Title 11; and

(14) Ascertain the wishes of the child and make the child's wishes known to the Court. If the attorney guardian ad litem concludes that the child's wishes differ from the position of the attorney guardian ad litem, he or she will notify the Court of the conflict.

(d) Criminal investigations and/or prosecutions.--Notwithstanding any provision of this chapter to the contrary, the Office of the Child Advocate shall in no way

8

intervene in any pending criminal investigation or prosecution, and shall provide no legal representation or advice to any suspect, defendant or respondent in any open criminal investigation or prosecution.

29 Del C §9007A.

Although the title given to the attorney appointed under this law is "guardian ad litem," it is clear that the duties, rights, and responsibilities provided for in this law far exceed the scope of any functionary who has heretofor been granted judicial immunity in any case in the Federal Courts wherein liability is based upon 42 U.S.C. §1983. What is clear from this statute is that the functionary's primary duty is to the child or children for whom the appointment is made. 29 Del. C. §9007A(c). In each of the sections of Lippstone's Brief, wherein he alleges the basis of his immunity from the claims made by the Plaintiff, his analysis is flawed. Lippstone relies upon the nomenclature used by the courts generally when discussing services provided by attorneys during certain phases of litigation or the judicial process, and in cases discussing attorneys appointed by courts to perform judicial functions. Lippstone fails to consider that it is the duties and responsibilities for which he was tasked in the Delaware statute by the Delaware legislature which bears upon and provides the distinctions that are relevant to the limited situations in which individuals are afforded immunity for acts performed on behalf of children by the courts. The majority of the acts, duties, and obligations for which Lippstone was charged by the Delaware statute do not afford him immunity if not performed with the requisite diligence.

> **A.    Not all of Lippstone's actions were an integral part of the judicial process for which absolute immunity from federal claims may be sustained.**

While Lippstone asserts that he is a "*pro bono*" volunteer, that fact is not alleged in the Plaintiffs' Complaint and it appears in the relevant statute that he may in fact be "employed,

contracted and/or appointed" by the Office of the Child Advocate under the court-appointed special advocate program. See: 29 Del. C. §9007A(c)(2). In spite of the assertions of Defendant Lippstone regarding his "judicial capacity" it is clear from the statute that a substantial number of his duties are not to the Court but instead are duties owed directly to the children he was appointed to serve, and the scope of that representation was to protect the child's best interests. 29 Del. C. §9007A(c). In fact, the statute providing for the services of the Defendant requires the Defendant to conduct independent investigations, monitor cases... to assure the terms of the Court's Orders are fulfilled, respond to complaints wherein the child is an alleged victim..., request a hearing before the Court when the plan on behalf of the child is not implemented or is not meeting the child's needs, request other appropriate relief from the Court on behalf of the child, appear on behalf of the child before the Violent Crimes Compensation Board, ascertain the wishes of the child and advise the Court. Most importantly, the guardian ad litem is tasked and given the power to obtain from "any agency, hospital, school, organization, division or department of the state, doctor, nurse, or other healthcare provider, treatment facility, psychologist, psychiatrist, police department or mental health clinic..., any records relating to the child and parents involved in the case of appointment without consent of the child or parents. See, e.g.: 29 Del. C. 9007A. These are the functions that a responsible parent would perform for or on behalf of a child. They are not the services required of the court nor a delegation thereof.

The United States Supreme Court has not issued a ruling on point for the instant case nor setting forth the immunity to be afforded to that broad class of persons which might fall within the description "guardian ad litem." See: <u>Gardner v. Parson</u>, 874 F. 2d 131, 144 (3d Cir. 1989). The Third Circuit has adopted a "functional approach" which looks to the nature of the functions being

performed and not the identity or nomenclature used to describe the actor who performs the function. Hughes v. Long, 242 F. 3d 121, 125 (3d Cir. 2001); citing: Forrester v. White, 484 U.S. 219, 224 (1988)[2]. The Supreme Court has addressed the issue of absolute immunity in other contexts, including that afforded to prosecutors, and has therein differentiated between activities "intimately associated with the judicial process" as are initiating and pursuing criminal prosecution, and those that are tangential of those direct judicial roles, such as investigative and administrative duties, for which no immunity is granted. Imbler v. Pachtman, 424 U.S. 409, 430 (1976).

Where clearly judicial duties are delegated or ordered by the Court to be performed immunity may be recognized. See: Gardner v. Parson, 874 F. 2d 131, 145 (3d Cir. 1989)("[a] guardian ad litem would be immune in exercising such functions as... making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court"). Where; however, the role of the guardian goes beyond the performance of service to the court and into the area of administration and investigation for other purposes, as outlined in the Delaware statute's duties, rights, responsibilities and obligations provisions established by the Delaware legislature, blanket immunity is simply not supported in any existing formulation of the doctrine of judicial immunity. While the guardian's duties in the present case may involve, in certain circumstances, reporting to the Court and participating in its adjudication of matters involving the custody of the children, there are many more duties and obligations primarily directed to serving the interests of the children themselves, who, once removed from the custody of their parents and brought within the judicial process stripped of parental oversight in all areas of their lives and are being shuttled through the

---

[2]

As is noted in the Forrester *supra* case, "the official seeking immunity bears the burden of showing that it is justified by the function in question.". Id. at 224

state foster child system with no oversight absent the guardian. See: 29 Del. C. §9007A(a). (The general assembly has recognized the need to safeguard the welfare of abused, neglected and dependent children of this state. As such, it has charged the Office of the Child Advocate and the Court-Appointed Special Advocate Program with ensuring representation of children's best interests in child welfare proceedings...).

The allegations of the Plaintiffs' Complaint in the instant case aver actions on the part of Defendant Lippstone that fall outside of any judicial role that he was performing for the Court and focus, inter alia, on his alleged failure to protect the children in the selection process of the Defendants Haynes, who physically injured them, and in overseeing them while in those Defendants physical custody. A simple reading of 29 Del. C. §9007A(b)(1)-(4) & (c)(1)-(14) makes it clear that the blanket immunity sought by the Defendant is untenable. While the facts of this case may ultimately exonerate the Defendant, one can only wonder why, if the facts were such that his statutory obligations to these children were met, he would require the execution of a General Release before honoring his obligation to submit to the parents and attorneys representing the children the information and file materials in his possession for which he was charged with accumulating. (See Exhibits "A"-"C" and discussion infra at pp. 4-5 ).

### B.     Defendant Lippstone is not immune from suit under the Eleventh Amendment of the United States Constitution.

The argument that Defendant Lippstone is immune from suit under the Eleventh Amendment is misplaced. Although the Plaintiffs' Complaint does require amendment to more fully outline and allege the facts and the capacity upon which Lippstone's liability rests, it is clear that he was sued in both his individual and official capacities. (Plaintiffs' Complaint ¶14). Whether or not Lippstone

acted in his *official capacity* as the "guardian ad litem" appointed pursuant to the Delaware State

Code as cited supra, or whether his conduct was in an *individual* capacity, not in accordance with

the custom, policy, or practice of other such guardians ad litem appointed pursuant to this statutory

provision, he is and will continue to remain an individual subject to liability under 42 U.S.C. §1983

liability and will not be afforded the protections of a state, state agency, or state officer under the

Eleventh Amendment.

> **C.    The question of whether Lippstone is entitled to immunity under Delaware State law pursuant to Delaware Code §29 Del. C. §9008A is a question of law which cannot be resolved within the present Motion.**

The indemnification provision of the Delaware Code for attorneys and other persons working

for the Office of the Child Advocate provides protection for such persons:

> resulting from any act or omission performed during or in connection with the discharge of his or her duties with the office within the scope of his or her employment or appointment, *unless the act or omission is done with gross or want negligence, or maliciously, or in bad faith*.

29 Del. C. 9008A (emphasis added).

As has been discuss supra, the Plaintiffs have asked to amend their Complaint following the

disclosure of the Defendants' files including those of Defendant Lippstone.  Unless and until

Defendant Lippstone's files have been produced, without the obligation of signing the General

Release that he sought to impose upon the Plaintiffs, there is no basis upon which to apply this

indemnification from liability statute with respect to the claim for civil damages under the laws of

Delaware.  This provision bears no applicability to the claims arising out of the Constitution and

laws of the United States.

**D.    Defendant Lippstone's claims for the dismissal of state law claims based on 31 Del. C. §304 and 29 Del. C. §9007A are premature.**

For the reasons discussed supra, the request for summary dismissal of the Plaintiffs' Complaint as it is currently plead is premature.  The standards to be applied to the Defendant must be weighed against his actual conduct, which is something that he has failed and refused to disclose pursuant to his obligations to the minor Plaintiffs.  Unless and until those actions are fully disclosed, the Defendant's liability to the Plaintiffs cannot be adjudged reasonably nor in the interest of justice.

## CONCLUSION

For the reasons set forth herein the minor Plaintiffs respectfully request that this Honorable Court deny Defendant, Lippstone's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  It is further respectfully requested that this Honorable Court consider the Plaintiffs' Motion for Rule 16 Conference  and Discovery in Aid of Filing Amended Complaint Pursuant to F.R.C.P. 26(d) and enter an Order setting forth a time period within which the Defendants must honor their disclosure obligations pursuant to Rule 26, providing for limited discovery by the Plaintiffs so that they may file an Amended Complaint.

SCHMIDT, KIRIFIDES, PEARSON, KOUTCHER & FRIDKIN

/s/_____
Matthew H. Osborne, Esq. Bar #4630
1301 N. Harrison Street, Unit 105
Wilmington, DE 198806
(302) 836-3900
Attorneys for Plaintiffs

Dated: June 16, 2008

14

MICHAEL A. MARKS◇
EDWARD B. FEINER*
MARK S. FRIDKIN ○
CRAIG A. BERNSTEIN*
F. PHILLIP RENZULLI‡
MATTHEW H. OSBORNE**

LAW OFFICES

**MARKS, FEINER & FRIDKIN**

A PROFESSIONAL CORPORATION

1301 NORTH HARRISON STREET

UNIT #105

WILMINGTON, DELAWARE 19806

2070 SPRINGDALE ROAD
SUITE 400
CHERRY HILL, NEW JERSEY 08003
(856) 354-0951
FAX (856) 354-2017

——

800 STEPHEN GIRARD BUILDING
21 SOUTH 12TH STREET
PHILADELPHIA, PENNSYLVANIA 19107
(215) 563-7888
FAX (215) 563-3594

——

363 ROUTE 100 SOUTH
ALLENTOWN, PENNSYLVANIA 18106
(610) 391-9889
FAX (610) 395-7442

‡ MEMBER DE  PA and NJ BAR
○ MEMBER PA BAR ONLY
* MEMBER NJ and PA BAR ONLY
** MEMBER DE and PA BAR
^ MEMBER NJ BAR

(302) 654-1374
FAX (302) 655-1723

February 8, 2007

Andrew H. Lippstone, Esquire
**Buchanan, Ingersoll Rooney, P.C.**
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801-1054

      RE:    Lachey Catchings f/k/a Sharese Wilson

Dear Mr. Lippstone:

      It is our understanding that you were appointed the guardian ad litem of Lachey Catchings (f/k/a Sharese Wilson) and that you represented her in this capacity during the time that she sustained serious injuries as a result of suspected child abuse.  This office has been retained by Lachey to represent her for the injuries she has sustained.

      On behalf of our client, we are formally requesting a copy of the entire file that you have for Lachey; to which she is entitled under Delaware law.

      Thank you for your attention to this matter.  Should you have any questions or concerns, please contact Mark S. Fridkin or myself at the above telephone number.

                Very truly yours,

                MATTHEW H. OSBORNE

MHO/mew

# Buchanan Ingersoll ⚖ Rooney PC

Attorneys & Government Relations Professionals

Andrew H. Lippstone
302 552 4207
andrew.lippstone@bipc.com

The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801-1397

T 302 552 4200
F 302 552 4295

www.buchananingersoll.com

February 27, 2007

Mark S. Fridkin, Esquire
Marks, Feiner & Fridkin
800 Stephen Girard Building
21 South 12th Street
Philadelphia, PA 19107

Re:   Lacey Catchings, f/k/a Sharese Wilson

Dear Mark:

As per our previous discussions and in response to the letter from your associate, Matthew Osbourne, dated February 8, 2007, I would be happy to assist you to the extent permissible under Delaware law in connection with your investigation of the injuries sustained by Lacey Catchings.

Upon further research and discussion with Tania M. Culley, Esquire, the Child Advocate for the Office of Office of Child Advocate ("OCA") for the State of Delaware, it has come to my attention that pursuant to 29 *Del. C.* 9006A, information contained in files kept in connection with this matter are confidential except for good cause shown by order of the court. As a general matter, I do believe it is in Lacey's best interest that your firm be provided with certain materials contained in the file, and am available to assist you with respect to your application to the court (and would be glad to do so), subject to my receipt of the general release discussed below.

Pursuant to our previous discussions, I have attached a general release of claims in connection with my representation as guardian *ad litem* of Lacey and Latrell Catchings. This release would be subject to the requirements of 29 *Del. C.*, Chapter 90A and any other applicable law or rule of court.

Upon execution of the general release upon the terms herein described, I will be more than happy to provide such assistance as may be helpful to your investigation (consistent, of course, with my duties under Delaware law). I look forward to hearing from you.

Sincerely,

Andrew H. Lippstone, Esq.

cc:   Tania M. Culley, Esq.
AHL: uvb
Enclosures

Pennsylvania :: New York :: Washington, DC :: Virginia :: Florida :: New Jersey :: Delaware :: Ohio :: California

<u>**GENERAL RELEASE**</u>

**THIS GENERAL RELEASE** ("Release") is hereby entered into this ___ day of February, 2007 by and between **Lacey Milan Catchings**, a minor, f/k/a Sharese Carolene Wilson ("Lacey"); **Latrell Marshawn Catchings**, a minor, f/k/a Lamar Shovon Wilson ("Latrell"; with Lacey, together, the "**Children**") by their parents **Gladys Marie Deshields Catchings** ("Mother") and **Sherman Lee Catchings** ("Father") (with Mother, the "**Parents**"); **Gladys Marie Deshields Catchings**, individually; **Sherman Lee Catchings**, individually (all collectively, the "**Releasing Party**"); and **Andrew H. Lippstone, Esquire** ("**Released Party**").

## RECITALS

**WHEREAS**, Released Party has served as a volunteer through the Office of the Child Advocate for the State of Delaware since 2003; and

**WHEREAS**, on June 26, 2003, Released Party was appointed by the Family Court of the State of Delaware in and for New Castle County ("**Court**") as guardian *ad litem* for the Children pursuant to Chapter 90A of Title 29 of the Delaware Code; and

**WHEREAS**, by order of the Court ("**Adoption Order**") dated December 8, 2006 ("**Adoption Date**"), the Children were adopted by the Parents, and

**WHEREAS**, pursuant to the Adoption Order, Released Party's duties as guardian *ad litem* ceased as of the Adoption Date; and

**WHEREAS**, on or about October 31, 2005, Lacey sustained severe burns to her hand while in the care of foster parents ("**Foster Parents**") in Mechanicsburg, Pennsylvania (the "**Burn Incident**"); and

**WHEREAS**, Parents are considering asserting claims against certain parties in connection with the Burn Incident, including, without limitation, Rejoice! Inc. ("**Rejoice**"), a private adoption agency which placed Lacey and Latrell in the home of the Foster Parents; and

2

**WHEREAS**, Parents desire to enlist the assistance of Released Party in connection with their investigation of Burn Incident and possible assertion of claims in connection therewith; and

**WHEREAS**, in connection with such assistance, Releasing Party has agreed to provide Released Party with this general release of claims, subject to the review by and approval of any applicable court of law, as set forth more fully herein.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, Releasing Party and Released Party hereby agree as follows:

**I.     Recitals**.

The Recitals above are a material part of this Release and are incorporated herein by reference as if set forth fully.

**II.    General Release of Released Party**.

In exchange for the provision of such assistance as Released Party may deem necessary in protecting the interests of the Children ("**Assistance**"), and subject to any and all existing laws and court procedures (including without limitation, Chapter 90A of Title 29 of the Delaware Code), Releasing Party, and each of them, for itself and its heirs, executors, administrators, personal representatives, successors and assigns, does hereby fully and finally release, remise, and forever discharge Released Party, its employer, former employers, heirs, executors, administrators, personal representatives, successors, assigns, agents, insurers, trustees, receivers, custodians, attorneys, and all persons and entities in privity therewith (collectively, the "**Released Parties**") of and from any and all manner of actions, causes of action, suits, debts, agreements, leases, judgments, arbitration awards, demands and claims whatsoever, in law or equity, for indemnity or contribution, or pursuant to statute, regulation or ordinance (collectively, "**Claims**"), whether or not such Claims were heretofore known, suspected or asserted, including

3

particularly, but not limited to, any and all Claims arising out of, relating to, resulting from, or in any way connected with Released Party's representation of the Children as guardian *ad litem*. Without limiting the generality of the foregoing, it is expressly agreed that this Release shall be binding with respect to any and all Claims which may arise as a result of information discovered by the Releasing Parties subsequent to the execution of this Release.

**III.    Voluntary Release.**

The Parties hereto, by their signatures below, represent, confirm, and agree that:

1.    Each has read this Release carefully and completely understands all provisions contained herein;

2.    Each is aware of his or her right to consult with legal counsel and each has had ample time and opportunity to do so; and

3.    Each has executed this Release freely and voluntarily, without any threat, duress, coercion, compulsion, or force of any sort and without reliance upon any act, inaction, representation, or statement made or give which is not set forth in this Release.

**IV.    Controlling Law and Enforcement of Terms**

This Release and shall be governed by and construed and enforced in accordance with the laws of the State of Delaware without giving effect to the principles of conflicts of laws.  All remedies at law and equity shall be available for the enforcement of this Release.

**V.    Release Binding on Heirs and Assigns**

This Release shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, personal representatives, successors, assigns, and all persons and entities in privity therewith.

**VI.    Jurisdiction/Venue of Actions Under this Release**

4

The parties hereto agree that, in the event any legal action or lawsuit is brought or filed under or pursuant to or for breach of this Release, it shall be brought/filed solely in the Courts of the State of Delaware.

**VII.   Severability**

The invalidity or unenforceability of any term, provision, or clause of this Release shall be severable and shall in no way affect or invalidate any other term, provision, or clause hereof.

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have executed this Mutual General Release and Indemnification Agreement on the date(s) set forth below.

**RELEASING PARTIES:**

**Attest:**                                    **Lacey Milan Catchings, a minor, by:**

_____ **(SEAL)**   _____ **(SEAL)**
                                               Gladys Marie Deshields Catchings, mother

                                               _____ **(SEAL)**
                                               Sherman Lee Catchings, father

**Attest:**                                    **Latrell Marshawn Catchings, a minor, by:**

_____ **(SEAL)**   _____ **(SEAL)**
                                               Gladys Marie Deshields Catchings, mother

                                               _____ **(SEAL)**
                                               Sherman Lee Catchings, father

Attest:                            **Gladys Marie Deshields Catchings**


_____ (SEAL)    _____ (SEAL)


Attest:                            **Sherman Lee Catchings**


_____ (SEAL)    _____ (SEAL)



                                   **RELEASED PARTY:**

Attest:                            **Andrew H. Lippstone**


_____ (SEAL)    _____ (SEAL)






WLM #1005586