## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

L.C. 1, ET AL.,                                     :
                                                    :
                    Plaintiffs,                     :
                                                    :
            v.                                      :        C.A. No. 07-675-GMS-LPS
                                                    :
STATE OF DELAWARE, ET AL.,                          :
                                                    :
                    Defendants                      :

## REPORT AND RECOMMENDATION
## AND ORDER REGARDING PENDING MOTIONS

In this action, two minors, LC1 and LC2, by and through their legal guardians

("Plaintiffs"), have sued multiple defendants under federal law for alleged violations of their civil

rights, as well as under state law for related alleged violations.  One defendant, Andrew

Lippstone ("Lippstone"), was the appointed guardian *ad litem* for Plaintiffs during times relevant

to the allegations.  Other defendants – the State of Delaware, the Delaware Division of Family

Services, and the Delaware Department of Services for Children, Youth and their Families

(collectively, the "Agency Defendants"), as well as Marcia Tremper ("Tremper," and together

with the Agency Defendants hereinafter referred to as the "State Defendants") – were allegedly

involved in removing Plaintiffs from the custody of their parents and placing them in a new,

dangerous living arrangement[1]  Lippstone and the State Defendants have filed motions to

---

[1]The non-moving defendants are: Children and Families First; Jessica Glockley; Christine
Hermes; Buchanan Ingersoll & Rooney, P.C. ("Buchanan"); Klett, Rooney, Lieber, and
Schorling, P.C. ("Klett"); Rejoice, Inc.; BreAune Catlett; Dequan Haynes; and Kimberly Haynes.
(D.I. 1 ¶¶ 9-13, 15-18)  Defendants Buchanan and Klett have been dismissed from the case.  (D.I.
27)

1

dismiss.  For the reasons that follow, I recommend that both motions to dismiss be granted.

Factual and Procedural Background[2]

According to the complaint, the Plaintiffs were removed from the custody of their biological parents on or about May 28, 2003.  (D.I. 1 ¶ 22)  They were placed under the supervision of the State Defendants, among others.  *Id.*  On or about June 26, 2003, the Family Court for the State of Delaware appointed Lippstone as the Plaintiffs' guardian *ad litem*.  (D.I. 1 ¶ 24)

At some point prior to October 2005, the State Defendants, Lippstone, and others caused the Plaintiffs to be placed in the home of defendants D. Haynes and K. Haynes (the "Haynes Defendants") in Pennsylvania.  (D.I. 1 ¶ 30)  On or about October 28, 2005, the Haynes Defendants caused or allowed Plaintiff LC1 to be severely scalded on LC1's hands and made Plaintiff LC2 watch LC1 screaming in discomfort.  (D.I. 1 ¶ 36)  Despite suffering severe burns, Plaintiff LC1 did not receive medical attention for three days, resulting in extreme infections to LC1's hands.  (D.I. 1 ¶ 39)

Plaintiffs filed their complaint on October 26, 2007.  (D.I. 1)  It asserts nine claims, arising under federal and state (Delaware and Pennsylvania) law,[3] seeking monetary and

---

[2]The factual statements contained in this section and throughout this Report and Recommendation are taken from the complaint, the allegations of which are taken as true for purposes of resolving the pending motions.

[3]The parties have devoted no attention to the claims supposedly being asserted under Pennsylvania law.  Because Lippstone and the State Defendants have moved to dismiss all claims pending against them, which would include the alleged violations of Pennsylvania law, and Plaintiffs have not addressed Pennsylvania law, I assume there is no unique basis on which the Pennsylvania claims could survive the motions to dismiss.

injunctive relief, against a total of 14 defendants.  Relevant here are the following: Count I, alleging a violation of substantive due process under 42 U.S.C. § 1983 against Lippstone and the State Defendants; Count II, also against Lippstone and the State Defendants, alleging violation of 42 U.S.C. § 1983 under a theory of state created danger; Count III, against the Agency Defendants, alleging a failure to train and supervise under 42 U.S.C. §§ 1981 and 1983; Count IV against Lippstone and all of the State Defendants for an award of attorney's fees pursuant to 42 U.S.C. § 1988; Count V alleging negligence and Count VII alleging intentional or negligent infliction of emotional distress, all under Delaware and Pennsylvania law, against Lippstone and the State Defendants; Count VIII, against Lippstone and the State Defendants, for violation of 31 Del. C. § 304, which provides that "dependent and neglected children . . . shall be considered . . . wards of the state;" and Count IX, against Lippstone and the Agency Defendants, for violation of 29 Del. C. § 9007A, which sets forth the duties of guardians *ad litem*.[4]

The State Defendants filed their motion to dismiss on February 20, 2008.  (D.I. 13) Lippstone filed his motion to dismiss on March 3, 2008.  (D.I. 29)  On July 23, 2008, the case was referred to the undersigned magistrate judge.  (D.I. 64)  I held a motions hearing on October 24, 2008.

---

[4]Plaintiffs have stated that they are no longer pursuing Counts VIII and IX.  *See* Transcript of Oct. 24. 2008 hearing (D.I. 74) (hereinafter "Tr.") at 31-32.  I recommend that these counts be dismissed against all defendants, since the statutes on which the Plaintiffs rely do not provide a private cause of action.

3

Lippstone's Motion

I recommend that Lippstone's motion to dismiss be granted, and that all counts against him be dismissed. My recommendation is based on my conclusion that Lippstone is immune from suit under federal and state law.

Immunity issues should generally be resolved at an early point in litigation. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed."); *Williamson v. United States Dept. of Agriculture*, 815 F.2d 368, 382-83 (5th Cir. 1987) (affirming stay of discovery pending resolution of questions of immunity); *see also Bright v. Westmoreland County*, 443 F.3d 276, 286 (3d Cir. 2006) (same for issues of state immunity), *cert. denied*, 127 S. Ct. 1483 (2007). This is especially so where the immunity a defendant is asserting encompasses immunity from suit, and not just a defense to liability. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). Such immunity is "effectively lost if a case is erroneously permitted to go to trial." *Id.* at 201 (internal quotation marks omitted).

The complaint expressly alleges that all of Lippstone's actions were undertaken in his official capacity:

> At all times relevant hereto, defendant Lippstone was the serv[a]nt, workman, agent, official, and employee of defendants Delaware, DFS, DSCYF, Buchanan and Klett. All acts and/omissions conducted herein by defendant Lippstone were done with the full authority, direction, and consent of defendants Delaware, DFS, DSCYF, Buchanan, and Klett in the course and scope of his official capacity and employment with those defendants.

(D.I. 1 ¶ 47 (emphasis added)) The specific allegations against Lippstone confirm that he is being sued for acts and/or omissions he took or failed to take in his official capacity as guardian

*ad litem* for the minor Plaintiffs: he was appointed guardian *ad litem* (D.I. 1 ¶ 24); working with

the State Defendants and others he caused the minor Plaintiffs to be placed with the Haynes

Defendants (D.I. 1 ¶ 30); and along with the State Defendants and others he failed to conduct

adequate investigations of the Haynes Defendants' home before or after the placement of the

minor Plaintiffs (D.I. 1 ¶¶ 31-32, 34).  Notwithstanding two confusing references to Lippstone in

his individual capacity – in the case caption, which purports to name as defendant "Andrew

Lippstone, Esq., individually and in his official capacities [with Buchanan and Klett]" (D.I. 1 at

1), and in the section identifying the parties, which describes Lippstone as "an adult individual

sued in both his individual and official capacities, including that of associate with Buchanan and

Klett" (D.I. 1 ¶ 14) – the complaint is most reasonably read as alleging claims against Lippstone

solely in his official capacity. *See Melo v. Hafer*, 912 F.2d 628, 635-36 (3d Cir. 1990), *aff'd*, 502

U.S. 21 (1991) (to make determination if suit is against defendant in individual or official

capacity, one must consider language used in claims for relief and not just case caption).[5]

A court-appointed guardian *ad litem* has judicial immunity from § 1983 suits for actions

taken in the guardian's official capacity that are integral to the judicial process. *See Hughes v.*

*Long*, 242 F.3d 121, 126-27 (3d Cir. 2001) (affirming immunity for case workers performing

functions similar to guardians *ad litem*, and describing guardians *ad litem* as "'arms of the court'

---

[5]At the hearing, Plaintiffs' counsel insisted the complaint makes allegations against
Lippstone in his individual capacity, specifically that "when acting as a guardian *ad litem*,
[Lippstone] act[ed] in a manner that [was] outside of the custom, policy or practice of the agency
or outside of the rules of conduct set out for him . . . [so] he is responsible for his personal
conduct in that regard." Tr. at 27-28.  But the complaint contains no such allegations. To the
contrary, it alleges that "[a]ll acts and/omissions conducted herein by defendant Lippstone were
done with the full authority, direction, and consent of [the Agency Defendants, among others] in
the course and scope of his official capacity and employment with those defendants." (D.I. 1
¶ 47 (emphasis added))

. . . fulfill[ing] a quasi-judicial role at the court's request [and] perform[ing] functions integral to the judicial process"); *Gardner v. Parsons*, 874 F.2d 131, 146 (3d Cir. 1989) (stating guardian *ad litem* is absolutely immune when acting as integral part of judicial system, including when "exercising functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court"); *Buchanan v. Gay*, 491 F. Supp.2d 483, 494 (D. Del. 2007) (holding volunteer attorneys serving Family Court as factfinders enjoy judicial immunity from § 1983 suits).

Pursuant to Delaware law, a guardian *ad litem* is appointed and ordered by the court to "mak[e] recommendations to the Court as to what is in the best interests of the child." 29 Del. C. § 9002A(11); 29 Del. C. § 9007A(b) (providing court order "shall impose on the attorney guardian *ad litem* all the duties, rights and responsibilities set forth in this section"). In making such recommendations, and applying the same legal standard the court applies in making custody and placement decisions, a guardian *ad litem* is performing an act that is integral to the judicial process. The guardian *ad litem* does so pursuant to court order. As Plaintiffs acknowledge, "the Delaware Family Court, in conjunction with the Office of the Child Advocate, ordered the appointment of Defendant Lippstone to fulfill the duties and responsibilities provided for pursuant to 29 Del. C. § 9007A." (D.I. 59 at 3 (citing D.I. 1 ¶ 24)) It follows that as a court-appointed guardian *ad litem* Lippstone is immune from suit on Plaintiffs' federal claims: Counts I, II, and IV.[6]

---

[6]I do not need to reach Lippstone's additional argument that he is immune from suit under the Eleventh Amendment.

Delaware law provides similar immunity from suit to guardians *ad litem* acting within the scope of their official capacities. 29 Del. C. § 9008A states:

> No attorney . . . <u>volunteering for the Office of Child Advocate shall be subject to suit</u> directly, derivatively or by way of contribution or indemnification for any civil damages <u>under the laws of Delaware resulting from any act or omission performed during or in connection with the discharge of his or her duties with the Office within the scope of his</u> or her employment or <u>appointment, unless the act or omission was done with gross or wanton negligence, maliciously, or in bad faith.</u>

(Emphasis added)

I find in the complaint no allegations that Lippstone acted with gross or wanton negligence, maliciousness, or bad faith. Plaintiffs point to the allegations that "no investigation [was] conducted into the proposed parents" and "there was no ongoing monitoring of these children's healthcare and other conditions." Tr. at 24-25. Assuming, as I must, these allegations are true, and recognizing their disturbing nature, it remains that these purported failures to act do not incorporate any allegation that Lippstone knowingly exposed the minor Plaintiffs to unacceptable dangers or risks. There is, for instance, no allegation that he knew the Haynes Defendants had any criminal record or a history of violence. The complaint's general allegation that Lippstone (and others) acted (or failed to act) with "deliberate indifference" is inadequate, given that the specific, substantive allegations in the complaint (i.e., the failures described above) do not amount to "deliberate indifference." *See Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (holding court may reject "unsupported conclusions and unwarranted inferences" in reviewing motion to dismiss). In context, Plaintiffs have failed to allege conduct that falls outside the broad scope of immunity

provided to a guardian *ad litem* under Delaware law. *See, e.g.*, *Browne v. Robb*, 583 A.2d 949, 953 (Del. 1990) (defining gross negligence as "higher level of negligence representing an extreme departure from the ordinary standard of care") (internal quotation marks omitted). Accordingly, Counts V and VII against Lippstone should be dismissed.

Plaintiffs contend it is "entirely premature" to resolve Lippstone's motion to dismiss because Lippstone "has failed and refused to provide the Plaintiffs' current adoptive parents with the investigation and documentation that he was charged by law to obtain on behalf of the minor children." (D.I. 59 at 2) "Defendant Lippstone [] conditioned his cooperation and the fulfillment of his duties to the Plaintiffs on their execution of a General Release of any claims against him." (D.I. 59 at 4) Plaintiffs ask skeptically: "why, if the facts were such that his statutory obligations to these children were met, [would he] require the execution of a General Release?" (D.I. 59 at 12) However, as Lippstone explains, the materials Plaintiffs have sought from him are confidential and he is not permitted by law to disclose them to anyone, even to the Plaintiffs. (D.I. 62 at 4 (citing 29 Del. C. § 9006A)) In these circumstances, there is nothing improper nor even suspicious about Lippstone's handling of Plaintiffs' document request. Most importantly, it does not deprive him of the immunity from suit provided to him under federal and state law.

As a fallback, Plaintiffs seek the opportunity to file an amended complaint. (D.I. 59 at 13) However, Plaintiffs' counsel has candidly admitted that Plaintiffs have nothing to add to their allegations against Lippstone. Tr. at 29. What they are actually seeking is deferral of a ruling on Lippstone's motion, followed by discovery, followed by an opportunity to amend the complaint. (D.I. 57 ¶ 2 ("At this juncture, it is impossible for Plaintiffs to effectively answer a motion to dismiss because no discovery has been undertaken.")) But motions to dismiss are

8

directed to the adequacy of the pleadings and, accordingly, are almost always amenable to resolution prior to discovery. This is particularly so where, as here, immunity defenses are asserted.[7]

Finally, Plaintiffs' counsel has argued that to dismiss this suit against Lippstone based on immunity would be wrong because it would render claims by minors of the sort Plaintiffs are asserting here non-justiciable, given that the two-year statute of limitations will almost inevitably expire before a guardian could develop adequate evidence to identify, investigate, and provide a reasonable basis for a minor's claims. Lippstone's counsel, on the other hand, has suggested that this case should be dismissed, prior to discovery, because any other ruling would devastate Delaware's guardian *ad litem* system – which depends on the willingness of volunteer attorneys to represent the interests of children who might otherwise be trapped in a tragic living situation. I do not believe either of these contentions are relevant to the legal issue presented by Lippstone's motion. I read the law to provide Lippstone immunity from suit under federal and state law for the functions he performed as guardian *ad litem*. Whether the policy interests articulated by Lippstone's counsel motivated the recognition of such immunity by the Court of Appeals and the Delaware legislature, and whether the competing policy interests cited by Plaintiffs' counsel were adequately considered by these decisionmakers, is not a matter I need to evaluate. My conclusion that such immunity exists and applies here ends the inquiry.

---

[7]For these reasons, I deny Plaintiffs' Motion for Rule 16 Conference and Discovery in Aid of Filing Amended Complaint and their Supplemental Motion for the same. (D.I. 57, D.I. 58)

State Motion

I further recommend that the State Defendants' motion to dismiss be granted, and that all counts against them be dismissed. The State Defendants are immune from suit under the Eleventh Amendment. State Defendant Tremper is also immune from suit.

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has interpreted the Eleventh Amendment as rendering states "immune from suits brought in federal courts by [their] own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Hence, the Eleventh Amendment "limits federal judicial power to entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a suit against a state agency is proscribed." *Neeley v. Samis*, 183 F. Supp.2d 672, 678 (D. Del. 2002). Congressional abrogation of state sovereign immunity requires a clear indication of Congressional intent. *See id.* This clear indication is lacking in 42 U.S.C. § 1983, which provides a cause of action against "persons," not "states." *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). The State of Delaware has not waived its sovereign immunity under the Eleventh Amendment. *See Buchanan*, 491 F. Supp.2d at 493. Therefore, the § 1983 counts against the Agency Defendants – Counts I through IV – must be dismissed.

Counts I, II, and IV must also be dismissed as against the remaining State Defendant, Tremper, a former social worker at DSCFY. (Tremper is not named in Count III.) "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a

10

suit against the official's office.  As such, it is no different from a suit against the State itself."
*Will*, 491 U.S. at 71 (internal citations omitted).  Moreover, a state official acting in her official
capacity is not considered a "person" within the meaning of § 1983 and is immune from suit.  *See
id.*

Here, Tremper is sued solely in her official capacity.  Paragraph 45 of the complaint
alleges: "All acts and/or omissions conducted herein by defendant Tremper were done with the
full authority, direction, and consent of [the Agency Defendants] in the course and scope of her
official capacity and employment with those defendants."  (Emphasis added)  No act attributed
by the complaint to Tremper is not also attributed to one or more of the State Agency
Defendants.  As with Defendant Lippstone, *see supra*, notwithstanding the fleeting references to
Tremper being sued in her individual capacity (in the caption and in paragraph 8 of the
complaint), the complaint is most reasonably read as alleging claims against Tremper in her
official capacity alone.  Therefore, she is immune from suit for the alleged violations of § 1983
and these counts (I, II, and IV) must be dismissed as against her.[8]

The state law claims against the State Defendants should also be dismissed.  This is due
to the Eleventh Amendment – which may provide immunity in federal court from claims that a
state violated its own laws – and issues of comity and judicial economy.  *See, e.g., Bowers v.*

---

[8]A citizen's suit against a state or state official seeking injunctive relief may proceed,
consistent with the Eleventh Amendment.  *See Melo*, 912 F.2d at 635 & n.5.  Here, while
Plaintiffs primarily seek money damages (compensatory and punitive damages as well as
attorney's fees and costs), the complaint also seeks "injunctive [and] legal and equitable relief as
appears just and reasonable."  (D.I. 1 ¶ 100)  In response to defendants' Eleventh Amendment
arguments, however, Plaintiffs have not attempted to distinguish among the relief they are
seeking.  This may be because there is no basis for injunctive relief, given that Tremper is no
longer employed by Delaware and Lippstone is no longer Plaintiffs' guardian *ad litem.*  (D.I. 14
at 9 n.3; D.I. 62 Ex. A)

*National Collegiate Athletic Ass'n*, 475 F.3d 524, 550 (3d Cir. 2007) (finding state university immune under Eleventh Amendment from suit alleging violations of state tort law); 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). Additionally, Defendant Tremper is immune under the Delaware Tort Claims Act, which provides that there is no cause of action against a public employee for an act or omission in connection with her performance unless it is done (or not done) "with gross or wanton negligence." 10 Del. C. § 4001(3). As with the allegations against Defendant Lippstone, there are no allegations against Defendant Tremper that rise to this level.

As they do with Defendant Lippstone, with respect to the State Defendants the Plaintiffs seek in the alternative the denial of the motion to dismiss, the opportunity to take discovery, and then to file an amended complaint. (D.I. 60 at 8, 11) Again, however, it is clear that Plaintiffs have nothing to add to their allegations at this time. *See, e.g.*, D.I. 60 at 11 ("[I]t is nearly impossible to allege facts which have not yet been discovered as to the named defendants. Should this Court in the instant case decide that Plaintiffs' Complaint is insufficient as to Ms. Tremper, Plaintiffs request that they be permitted to amend the complaint."). The complaint must be analyzed based on the allegations it contains and not speculation as to what allegations might be included at some later date. *See generally Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) ("To survive a motion to dismiss, a civil plaintiff must allege facts that raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).") (internal quotation marks omitted). I see no reason to await a post-discovery amended complaint when it is plain that the State Defendants are entitled to

12

dismissal of the claims against them.

## ORDER AND RECOMMENDED DISPOSITION

For the foregoing reasons:

1.      I recommend that Lippstone's motion to dismiss (D.I. 29) be GRANTED and that all counts against him (Counts I, II, IV, V, VII, VIII, and IX) be DISMISSED.

2.      I recommend that the State Defendants' motion to dismiss (D.I. 13) be GRANTED and that all counts against the Agency Defendants (Counts I, II, III, IV, V, VII, VIII, and IX) and all counts against Tremper (Counts I, II, IV, V, VII, and VIII) be DISMISSED.

3.      I recommend that Counts VIII and IX be DISMISSED as against all defendants.

4.      Plaintiffs' First Motion for Discovery and Rule 16 Conference (D.I. 57) and Supplemental Motion for Discovery and Rule 16 Conference (D.I. 58) are DENIED.

5.      A Rule 16 scheduling conference, for Plaintiffs and all defendants other than Lippstone and the State Defendants, will be held promptly.  A separate order setting this scheduling conference has been issued today.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation.  Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir.1987); *Sincavage v. Barnhart*, 171 Fed. Appx. 924, 925 n.1 (3d Cir. 2006).

13

The parties are directed to the Court's Standing Order In Non-Pro Se Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on

the Court's website, www.ded.uscourts.gov/StandingOrdersMain.htm.

Dated: December 23, 2008         UNITED STATES MAGISTRATE JUDGE